UNITED STATES of America, Appellee,

v.

Louis E. WOLFSON, Defendant–
Appellant.

No. 599, Docket 94–1158.

United States Court of Appeals,
Second Circuit.

Argued Jan. 10, 1995.

Decided May 10, 1995.

Donald E. Clark, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., S.D.N.Y. and Guy Petrillo, Asst. U.S. Atty., on the brief), for appellee.

David G. Leitch, Washington, DC (Gregory G. Garre, Hogan & Hartson, Washington, DC, Ira G. Greenberg, Edwards & Angell, New York City, on the brief), for defendant-appellant.

Before: KEARSE, McLAUGHLIN, and PARKER, Circuit Judges.

KEARSE, Circuit Judge:

Defendant Louis E. Wolfson appeals from an order of the United States District Court for the Southern District of New York, John F. Keenan, *Judge,* denying his motion for disclosure of documents that had been sealed and retained in a court vault for purposes of appellate review during Wolfson's criminal trial in 1967. The district court ruled that Wolfson failed to show any changed circum-

stance sufficient to warrant the unsealing of the documents. On appeal, Wolfson argues principally that the district court erred in placing on him the burden to show such a change in circumstances, rather than requiring the government to prove that the circumstances warranted continued nondisclosure. We disagree and affirm the denial of the motion.

## BACKGROUND

The material facts are not in dispute. In 1967, Wolfson was tried, along with a codefendant, on a charge of violating § 5 of the Securities Act of 1933, 15 U.S.C. § 77e(a), by selling a large quantity of stock of an issuer Wolfson controlled, for which no registration statement had been filed. Wolfson's primary defense was that he had not known of the registration requirements. One of the witnesses against him was his broker, John J. Morely, who testified that he had explained the registration requirements to Wolfson.

In order to attack Morely's credibility, Wolfson sought disclosure of earlier testimony by Morely before the Securities and Exchange Commission ("SEC"), along with the notes made by SEC investigators and an Assistant United States Attorney during interviews with Morely (collectively the "Morely documents"). Wolfson contended that the testimony and notes were discoverable under both the Jencks Act, 18 U.S.C. § 3500, and *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The government provided Wolfson with a redacted copy of Morley's SEC testimony, omitting testimony that related to a separate indictment against Wolfson, and it refused to turn over the requested notes. The government marked the unproduced documents for identification and submitted them to the trial court, Edmund L. Palmieri, *Judge,* for review *in camera.*

After conducting its *in camera* review, the trial court ruled that, with the exception of one page of the SEC testimony, the government was not required to disclose any of the material Wolfson had requested. Judge Palmieri ordered that the documents be sealed by the clerk of the court for possible review by the Court of Appeals. The pertinent docket entry begins, "Filed one sealed brown envelope marked 'Ordered sealed and Impounded by Court. Palmieri, J.' "; it lists the documents' identification numbers; and it concludes, "(Placed in vault—Room 602). PALMIERI, J."

The jury convicted Wolfson, and this Court affirmed, *see United States v. Wolfson,* 405 F.2d 779 (2d Cir.1968), *cert. denied,* 394 U.S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969). Our opinion made no reference to the alleged *Brady* or Jencks Act material.

Wolfson made postconviction efforts in other fora to have the Morely documents unsealed. In 1975, he sued Morely in the United States District Court for the Middle District of Florida, alleging a failure to advise him properly as to the SEC registration requirements, and obtained an order from that court directing the clerk of the Southern District of New York to unseal the Morely documents and transmit them to the Florida district court for inspection by the parties to that case. Judge Palmieri, however, forestalled that production by ordering the Southern District clerk not to unseal the documents until Wolfson had shown there were no longer sufficient grounds to keep them sealed. No such showing was made. Wolfson also requested the Morely documents pursuant to the Freedom of Information Act, 5 U.S.C. § 552, but had only limited success.

In February 1994, Wolfson moved in the Southern District to unseal the documents. He stated that when the materials were sealed in 1967, there had been no suggestion that, if disclosed, they would compromise the administration of justice or disserve the public interest. He argued that because nearly 27 years had passed since the sealing, and nearly 10 had passed since the death of his codefendant, there could no longer be any legal or factual basis for keeping the documents under seal. He also argued that he and his biographer had a compelling interest in obtaining the materials so that the biographer could write an accurate account of the circumstances of Wolfson's trial, and that the materials were exculpatory and therefore should have been disclosed at his trial.

Judge Keenan denied the motion, stating, "Wolfson has failed to identify any changed circumstances other than the passage of time that require the reversal of those sealing orders." (Memorandum Opinion and Order dated February 18, 1994, at 2, 1994 WL 62940.) The court concluded that the mere passage of time was not sufficient reason to unseal the documents. This appeal followed.

## DISCUSSION

On appeal, Wolfson argues principally that the lodging of the Morely documents in the district court created a presumptive right of public access derived from the First Amendment or from common law, and that the burden was thus not on him to show why the documents should be unsealed but rather on the government to show why they should not. We reject the right-of-access premises underlying this contention.

The public has an " 'implicit First Amendment right' " of access to criminal trials, absent an overriding countervailing interest. *Press–Enterprise Co. v. Superior Court*, 478 U.S. 1, 7, 106 S.Ct. 2735, 2739–40, 92 L.Ed.2d 1 (1986) (quoting *Waller v. Georgia*, 467 U.S. 39, 46, 104 S.Ct. 2210, 2215, 81 L.Ed.2d 31 (1984)); *see Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 564, 580–81, 65 L.Ed.2d 973 (1980) (plurality opinion). This qualified right of public access attaches as well to certain pretrial proceedings, *see, e.g., Press–Enterprise Co. v. Superior Court*, 478 U.S. at 10–13, 106 S.Ct. at 2741–43, and "to written documents filed in connection with pretrial motions" even if no hearing is held on the motion, *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir.1987), *cert. denied*, 485 U.S. 977, 108 S.Ct. 1272, 99 L.Ed.2d 483 (1988).

■ The public's First Amendment right of access to criminal proceedings and to documents submitted in them, however, is not all-encompassing. Whether there is a right of access to a particular stage of the proceeding or to a given class of documents depends on two questions: first, whether there has been a "tradition of accessibility" to that stage or those documents, *see Press–Enterprise Co. v. Superior Court*, 478 U.S. at 10, 106 S.Ct. at 2741; and second, whether that traditional public access "plays a particularly significant positive role in the actual functioning of the process," *id.* at 11, 106 S.Ct. at 2742.

■ Neither of these factors is present with respect to documents that were submitted to a court *in camera* as part of a discovery dispute and were held not discoverable. A defendant's *Brady* request for discovery of exculpatory materials or materials with which to impeach a government witness does not give the defendant the right to compel the disclosure of documents that are not material for those purposes; nor does it give the defendant the right to assess materiality himself. To the extent that there is a question as to the relevance or materiality of a given group of documents, the documents are normally submitted to the court for *in camera* review. Such review preserves the confidentiality of those documents that the court determines need not be disclosed to the defendant. *See generally Pennsylvania v. Ritchie*, 480 U.S. 39, 59–61, 107 S.Ct. 989, 1002–03, 94 L.Ed.2d 40 (1987); *id.* at 60, 107 S.Ct. at 1003 (disputed materials are properly "submitted only to the trial court for *in camera* review"). We are unaware of any traditional right of access on the part of the public to documents to which the defendant himself has been denied access.

Similarly, when a defendant has made a Jencks Act request for material that the government claims does not relate to the subject matter of the witness's testimony, the prescribed procedure for resolving the dispute is to provide the documents to the district court for *in camera* review. *See* 18 U.S.C. § 3500(c). If the court determines that the defendant is not entitled to view the material, the government need not produce it. If the defendant objects to that ruling, the text of the material "shall be preserved by the United States and, in the event the defendant appeals, shall be made available to the appellate court for the purpose of determining the correctness of the ruling." *Id.* Here too, where the courts determine that the defendant himself is not entitled to receive the material, the public has no traditional right of access to it. *See also*

*Anderson v. Cryovac, Inc.,* 805 F.2d 1, 13 (1st Cir.1986) (no traditional public right of access even to documents actually produced in civil discovery); *Gannett Co. v. DePasquale,* 443 U.S. 368, 396, 99 S.Ct. 2898, 2913–14, 61 L.Ed.2d 608 (1979) (Burger, C.J., concurring) (same).

Nor would there be any "significant positive role" for the granting of public access to documents that the court has found need not be disclosed because they do not constitute *Brady* or Jencks Act material. "[T]he purpose of *in camera* inspection is to supplement the Government's assessment of materiality with the impartial view provided by the trial judge," "not to provide a general discovery device for the defense." *United States v. Leung,* 40 F.3d 577, 583 (2d Cir. 1994). We would see no salutary effect in a principle that documents properly withheld from disclosure to a party became available to the public—and thereby to the defendant himself—merely because the defendant overreached in his discovery request. Granting the public access to these undiscoverable documents would furnish it with materials that do not bear on the merits of the trial to which the public has a right of access and would, in effect, give the defendant the discovery to which the court has ruled he is not entitled.

We conclude that the public has no First Amendment right of access to documents that the court has ruled need not be produced.

▪ Nor do we find applicable here the public's common-law right " 'to inspect and copy public records and documents, including judicial records and documents,' " *In re Newsday, Inc.,* 895 F.2d 74, 78 (2d Cir.) (quoting *Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1312, 55 L.Ed.2d 570 (1978)), *cert. denied,* 496 U.S. 931, 110 S.Ct. 2631, 110 L.Ed.2d 651 (1990). We have construed this right to extend to documents considered by the court in orders disposing of substantive pretrial motions. *See, e.g., Joy v. North,* 692 F.2d 880, 893–94 (2d Cir.1982) (summary judgment), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983). We are not aware, however, of any common-law principle that documents submitted to a court *in camera* for the sole purpose of confirming that the refusal to disclose them to another party was proper, are to be deemed judicial records open to the public. The district court normally returns such documents to the party that submitted them *in camera;* indeed, since Judge Palmieri ordered the Morely documents held only to facilitate review of any *Brady* or Jencks Act claim on appeal from Wolfson's conviction, an appeal that was decided decades ago, we are surprised that the documents remain in the possession of the court. In any event, nonproduction of the documents having been approved by the court, they are not public documents.

## CONCLUSION

We have considered all of Wolfson's arguments on this appeal and have found them to be without merit. There being no right of access to the documents on the part of Wolfson or the public, the order of the district court is affirmed.